

ENTERED
04/12/2019

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| APOLLO COMPANIES INC; dba APOLLO § | CASE NO: 17-80148 | |
| OFFICE SYSTEMS LLC; dba SOUTHWEST § | | |
| OFFICE SYSTEMS § | | |
|     Debtor(s) § | | |
| § | | |
| § | CHAPTER 11 | |
| § | | |
| APOLLO COMPANIES INC § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 18-08020 | |
| § | | |
| WINFRED FIELDS § | | |
|     Defendant(s) § | | |

## MEMORANDUM OPINION

On October 1, 2018, the plaintiff, Apollo Companies Inc, (hereinafter "Apollo") initiated this adversary proceeding by filing a complaint against Winfred Fields (hereinafter "Fields"). A bench trial was held on April 5, 2019. For the reasons so stated, the Court grants Apollo a judgment for $2,298.82, plus $919.20 in attorney fees.

On May 5, 2017, Apollo filed its voluntary petition under Chapter 11 of the Bankruptcy Code. Apollo has a confirmed Chapter 11 Plan and has instituted a number of adversary proceedings to collect on past due accounts. Apollo's business includes the sale and service of photocopiers and Fields is in the business of providing tax preparation services. On August 24, 2017, Apollo and Fields executed a two-page Equipment Agreement (Plaintiff's Exhibit 1) for a Xerox VersaLink B405/DNM Copier, including a maintenance (service) agreement. The first page of the agreement addresses the cost terms of the lease and service agreement, and the second page addresses the additional terms of the service portion of the agreement. The

Equipment Agreement provided for a 48-month lease at $98.77 per month, plus a base service fee of $10 and a black and white copy charge of .0169 cents per copy over 1,000 copies per month. On September 25, 2017, Apollo attempted to deliver the copier, but Fields refused delivery. Apollo charged Fields a restocking fee of $1,796.24 for his refusal to accept delivery. Apollo invoiced Fields for a total of $2,298.92 (Plaintiff's Exhibit 2), which includes the restocking fee, a delivery charge, a prior invoice for service on his old copier, and finance charges.

The parties filed a pretrial statement and have stipulated to jurisdiction. The Court incorporates the legal and factual stipulations contained therein into this memorandum order. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §§ 151, 157, and 1334, as well as the order of reference in bankruptcy cases in the Southern District of Texas.

**Breach of Contract**

This is a simple contract dispute. The plaintiff contends there was a binding, valid, and enforceable contract on which defendant Fields ultimately did not perform, and the defendant disputes that contention. The Court finds the Equipment Agreement, signed by both parties, is a valid contract.

The Equipment Agreement states Texas law will govern the contract. Under Texas law, the plaintiff must prove four elements to establish breach of contract: (1) a valid contract; (2) plaintiff's performance; (3) defendant's breach; and (4) resulting damages. *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 993 (5th Cir. 2019). Here, there was a valid, binding, enforceable contract between Fields and Apollo. Fields signed and dated the agreement, indicating his intention to be bound. Stated plainly, Fields did not honor his contractual obligation and promise on the Equipment Agreement by refusing to accept delivery of the Xerox

copier to the detriment of Apollo, who had ordered and paid for the copier based on the agreement.

Fields' arguments to the contrary are unpersuasive. According to the pretrial statement, Fields claims to not be bound to the two-page Equipment Agreement because Fields never paid Apollo, which Fields believes was required for the contract to effective, according to the terms and conditions of the contract. Defendant's statement of the case is as follows:

> Defendant signed a written Equipment Agreement and Maintenance Agreement with Plaintiff for a Xerox office machine for a fixed term of 48 months.
>
> Defendant is not bound to the Equipment Agreement and Maintenance Agreement and the entirety of it is void because no payment was issued from Defendant to Plaintiff as required by the terms and conditions of the Maintenance Agreement.

The relevant portions of page two of the Equipment Agreement provide:

> This service agreement is non-cancelable and will remain in effect for the duration of the term stated on the first page. Coverage will become effective upon the signature from both parties and the reception of payment at Apollo Office Systems (AOS) office.

The Court finds that this language on which the defendant relies is applicable only to the maintenance (service) agreement and not the lease of the copier. The Court finds this defense unpersuasive and notes that this is the sole defense raised by the defendant in the pretrial statement.

At trial, the defendant raised an additional defense. Fields argued that the copier was not delivered timely. Specifically, Fields claimed the copier should have been delivered within two to three days of the Equipment Agreement being signed and that it was promised to him not later than five to seven days after his signature date. First, given the failure to raise this defense in the pretrial statement, the Court considers this defense waived. Second, assuming that the defense was not waived, the Court finds Fields' testimony not credible and contradicted by the credible

testimony of Pamela Foley, President of Apollo. Ms. Foley testified Fields was advised that an in-stock copier would take ten to fourteen days for delivery and that an ordered copier, such as the one delivered to Fields, would take three to four weeks. The Court finds the delivery date of September 25, 2017 to be reasonable, especially considering the damage to Houston in Hurricane Harvey.[1] This defense is also unpersuasive. The Court, therefore finds Fields breach the Equipment Agreement.

Apollo seeks to recover $9,080.47 in contractual damages. However, the invoices Apollo sent to Fields seek only $2,298.92, which includes a $1,796.24 restocking fee,[2] a $162.38 delivery charge, a $160.21 prior outstanding service invoice, and $218.04 in finance charges. Meanwhile, the Equipment Agreement provides for a 48-month lease at $98.77 per month, plus a base service charge of $10 for the first 1,000 copies, totaling $5,220.96. Of these three values, the amount of the invoices seems to be the just amount for damages in this case. Because Fields refused delivery, the copier remained in Apollo's possession. Apollo was then free to sell or lease the copier to some third party after Fields refused delivery, however, it instead chose to bill Fields a restocking fee for a copier it did not have to replace. This Court will not permit Apollo to bill for one amount and demand nearly four times more that amount in damages, in such a situation. Apollo cannot have it both ways. Apollo invoiced Fields for $2,298.92, which the Court adopts as Apollo's damages. The Court, therefore, declines to award any amount which Apollo has sought beyond the amount of its own billing statement.

Moreover, the Court finds that Fields failed to give any notice of cancelation of the Equipment Agreement until its delivery on September 25, 2017. The Court makes these findings using a preponderance of the evidence standard, with the burden of proof allocated to Apollo, the

---

[1] Hurricane Harvey deluged Houston with about 50 inches of rain between August 26 and August 28, 2017.
[2] While the basis of the restocking fee was somewhat unclear by the evidence presented at trial, it was not challenged by the defendant and appears reasonable.

plaintiff. The Court places the burden of proof for damage mitigation on Fields by the same evidentiary standard. Further, the Court finds that the mitigation of damages was not raised in the pretrial statement and is, therefore, waived. Even if Fields did not waive a mitigation of damages, Fields failed prove by a preponderance of the evidence that Apollo failed to mitigate its damages. While the Court notes that Apollo's testimony, under the Court's questioning, was that the copier was eventually sold to some other party, Fields has failed to meet its burden of proof. Accordingly, the Court declines to lessen its damage award.

**Attorney Fees**

Apollo seeks an award of attorney fees totaling $18,537, pursuant to Texas Civil Practice and Remedies Code § 38.001. Section 38.001 provides, in pertinent part, that a person may recover reasonable attorney's fees from an individual, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract. Tex. Civ. Prac. & Rem. § 38.001. Section 38.002 provides the procedure for recovery by enumerating prerequisites to recovery: (1) the claimant must be represented by attorney; (2) the claimant must present the claim to the opposing party or duly authorized agent of the opposing party, and (3) payment for the just amount owed must not have been tendered within 30 days of presentment. Tex. Civ. Prac. & Rem. § 38.002. Apollo's prior attorney made presented its contractual damages claim to Fields through a demand letter 30 days prior to the institution of this adversary proceeding and Fields did not respond to the letter. Thus, Apollo appears to be entitled to attorney fees under the state statute.

The Fifth Circuit traditionally uses the lodestar method to calculate attorney's fees. *In re Cahill*, 428 F.3d 536, 539–40 (5th Cir. 2005). However, in light of the results obtained and the excessive and predatory nature of the demand letter in this case, the Court's fee award in this

case is informed other principles of Texas law. Under Texas law, a "creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt." *State Farm Lloyds v. Fuentes*, 549 S.W.3d 585, 588 (Tex. 2018) (citing *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981)). However, a demand is not excessive merely because it is greater than the amount the factfinder later determines is actually due. *Hernandez v. Lautensack*, 201 S.W.3d 771, 777 (Tex. App.—Fort Worth 2006, pet. denied). Rather, the inquiry for determining if a demand is excessive focuses on whether the debtor acted unreasonably or in bad faith in making the demand. *Id.* Texas has limited its application of this rule to cases where a creditor refuses the tender of an amount actually due or clearly indicates to the creditor that such a tender would be refused. *Finley*, 611 S.W.2d at 58. It is further noted that Texas law requires such an argument to be made as an affirmative defense, and the defendant in this case made no such claim. Still, the principles underlying the law of excessive demand in Texas informs the Court's opinion as to defendant Fields' failure to respond to Apollo's demand in this case.

Apollo's demand letter (Plaintiff's Exhibit 3), which the Court finds to be grossly overstated, provides in part as follows:

> Apollo is represented by an attorney, Apollo has a claim against Fields Enterprise, in an amount not less than $9080.47. Your past due balance, as of August 14 was $2,336.87. You are also in default under your contract, which is non-cancelable and has time remaining. Just compensation for the remaining months due under the contract, subsequent to August 14, is $6,743.60. Please be advised that if full payment for this claim is not tendered on or before the 30th day from August 22, 2018 (in other words, by September 21, 2018), then Apollo also reserves the right to seek and collect any attorney fees allowed by Texas law, in addition to the total amount of Apollo's claim. This claim hereby is being present to Fields Enterprise, by way of its authorized representative(s), in writing. **The just amount owed, in the event payment is tendered on or before September 21, 2018, is $9080.47.**

The unreasonable and excessive nature of this demand letter should appear evident. First, as admitted by the demand and as this Court has previously found, the past due balance billed and owing was only $2,336.87. This is the greatest amount Apollo has ever billed Fields; it has never billed him for $9,080.47, the amount it seeks in its demand letter. The invoice Apollo sent to Fields is clearly an admission as to the amount Fields owes Apollo. Yet, Apollo's demand letter requests a payment almost four times more than what has been billed.

The calculation for the amount due in the demand letter is pure speculation, not based on any reasonable facts. The demand amount is partially based on Apollo's counsel's assumption that Fields would make more than the base 1000 copies per month provided in the Equipment Agreement and therefore incur a per copy maintenance or service charge, which would be owed to Apollo. However, as stated by the Court, if Fields had accepted delivery of the copier, he could have placed it in a corner, never used it and never owed any per copy maintenance charge. Additionally, it is wholly unreasonable and contradictory for Apollo to both charge Fields a restocking fee and attempt to bill Fields for copies he could never make without the copier. Apollo cannot have it both ways.

This Court fully understands why a party faced with an unreasonable and excessive demand would defend collection litigation. However, the net effect of that defense, if the Court awards the requested attorney's fee, is extremely punitive. As stated, such attorney fee requests would likely be completely denied in excessive demand cases under Texas Law. The Court will not go to that extreme. The Court declines to award attorney fees as sought and awards a reasonable and customary attorney fee of 40% of the results obtained.

**IT IS THEREFORE ORDERED** that the complaint of Apollo is granted in part and denied in part. Apollo Companies Inc, is granted judgment against Winfred Fields in the amount

of $2,298.82, plus $919.20 in attorney fees and costs of court.

A separate judgment will issue.

SIGNED: 04/12/2019.

_____
Jeffrey P. Norman
United States Bankruptcy Judge